UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

TERRILEE JOHNSON

                Plaintiff,

     v.                           **DECISION AND ORDER**
                                    **05-CV-1299 (VEB)**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

## I. Introduction

      Plaintiff Terrilee Johnson challenges an Administrative Law Judge's

("ALJ") determination that she is not entitled to disability insurance benefits

("DIB") under the Social Security Act ("the Act").  Plaintiff alleges she has been

disabled since July 9, 2003, because of pain and limitations from a lower back

injury.  Plaintiff met the disability insured status requirements of the Act through

December 31, 2008.

## II.  Background

      Plaintiff filed an application for DIB on February 24, 2004[1].  Her application

was denied initially and, under the prototype model of handling claims without

requiring a reconsideration step, Plaintiff was permitted to appeal directly to the

ALJ.  See 65 Fed. Reg. 81553 (Dec. 26, 2000).   Pursuant to Plaintiff's request,

an administrative hearing was held via video teleconference on April 5, 2005,

---

[1] Plaintiff filed an earlier application for DIB on November 15, 2001 (R. at 14, 325).  She was found disabled because of a lower back injury and entitled to DIB for a closed period from November 5, 1999, until March 1, 2002.  She returned to her job as a police officer on light duty status in March 2002 (R. at 14, 325-326).

before ALJ Steven A. De Monbreum, at which time Plaintiff and her attorney appeared.  A vocational expert also testified.  The ALJ considered the case *de novo*, and on May 5, 2005, issued a decision finding that Plaintiff was not disabled.  On August 17, 2005, the Appeals Council denied Plaintiff's request for review.

On October 14, 2005, Plaintiff filed a Civil Complaint challenging Defendant's final decision and requesting the Court to review the decision of the ALJ pursuant to Section 205(g) and 1631(c) (3) of the Act, modify the decision of Defendant, and grant DIB benefits to Plaintiff.[2]  The Defendant filed an answer to Plaintiff's complaint on December 7, 2005, requesting the Court to dismiss Plaintiff's complaint.  Plaintiff submitted a Memorandum of Law ("Plaintiff's Brief") on February 15, 2006.  On March 13, 2006, Defendant filed a Memorandum of Law in Support of the Commissioner's Motion for Judgment on the Pleadings ("Defendant's Brief")[3] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  After full briefing, the Court deemed oral argument unnecessary and took the motions under advisement.

For the reasons set forth below, this Court finds no reversible error and finds that substantial evidence supports the ALJ's decision.  Thus, the Court affirms the decision of the Commissioner.

### III.  Discussion

---

[2] The ALJ's May 5, 2005 decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

[3] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings…"

**A.  Legal Standard and Scope of Review:**

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. § 405(g), 1383 (c)(3); Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. See  Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process[4] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. § 404.1520, 416.920. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984). The final

---

[4] This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged substantial gainful activity. If he is not, the [Commissioner]next considers whether the claimant has a "severe impairment" which
significantly limits his physical or mental ability to do basic work active-ties. If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment
which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work
experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment,
the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72,77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

**B. Analysis**

**1.    Commissioner's Decision**

In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff met the disability insured status requirements of the Social Security Act on July 9, 2003, and acquired sufficient quarters of coverage to remain insured through at least December 31, 2008 (R. at 23);[5]  (2) Plaintiff has not engaged in substantial gainful activity since July 9, 2003 (R. at 23); (3) The medical evidence establishes that Plaintiff suffers lumbar degenerative disc disease and is status post coccygectomy,[6] impairments that are "severe," but do not meet or equal the criteria of any impairments listed in Appendix 1, Subpart P, Regulations No. 4 (R. at 23); (4) Plaintiff's statements concerning her impairments and pain and their impact on her ability to work are not fully credible (R. at 23); (5) Plaintiff is able to lift up to ten pounds maximum, can sit for six hours in a workday; can push and pull ten pounds occasionally with her lower extremities; can stand and walk two

---

[5] Citations to the underlying administrative are designated as "R."
[6] The surgical removal of the Coccyx, i.e., the "tailbone" done in rare cases in an attempt to relieve tailbone pain. See http://www.merriam-webster.com/medical/coccygectomy.

hours in a workday; can perform all postural activities (climb stairs/ramps, balance, kneel, crawl, and stoop/bend) occasionally, except for climbing ladders, ropes or scaffolds, which she can never perform;  *and* should also avoid cold temperature extremes, vibrations, and hazards (R. at 23-24); (6) Plaintiff is unable to perform her past relevant work (R. at 24); (7) Plaintiff's capacity for a full range of sedentary work[7] is diminished by the limitations cited in 5 above (R. at 24); (8) On July 9, 2003, Plaintiff was within a few weeks of *becoming* 38 years old, a "younger individual age 18-44" (R. at 24); (9) Plaintiff has at least a high school education (R. at 24); (10) Plaintiff has semi-skilled work experience, and limited transferable work skills (R. at 24); (11) Based on an exertional capacity for sedentary work, and the Plaintiff's age, educational background, and work experience, Section 404.1569 and the Medical-Vocational Rules 201.28 and 201.29, Table 1, Appendix 2, Subpart P, Regulations No. 4 direc*t*s a conclusion of "not disabled" (R. at 24); (12) Although Plaintiff is unable to perform the full range of sedentary work, she is capable of making an adjustment to jobs that exist in significant numbers in the national economy as set forth herein.  A finding of "not disabled" is therefore reached within the framework of the above-cited medical-vocational rules (R. at 24); and (13) Plaintiff has not been under a disability, as defined in the Social Security Act, at any time from July 9, 2003, through the date of this decision (R. at 24).  Ultimately, the ALJ determined

---

[7] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.  See 20 C.F.R. § 404.1567(a).

Plaintiff was not entitled to a period of disability and disability insurance benefits as set forth in sections 216(i) and 223(d) of the Social Security Act (R. at 24).

>       **2.      Plaintiff's Claims**

Plaintiff challenges the decision of the ALJ on the basis that it is not supported by the substantial evidence of record.  Specifically, Plaintiff alleges (a) the ALJ failed to give controlling weight to the opinions of her treating physicians, and instead relied primarily on the opinion of a State agency examining physician, when making the determination that Plaintiff was not under a disability, (b) the ALJ erred in his credibility analysis because (i) he did not give specific and sufficient reasons for rejecting Plaintiff's credibility, and (ii) he did not consider Plaintiff's record of seeking treatment for her pain, and (c) the ALJ failed to consider that Plaintiff cannot work on a regular and sustained basis when he found that she retained the exertional capacity to perform a limited range of sedentary work.  See Plaintiff's Brief, pp. 3-12.

>       **a.      The ALJ Properly Considered the Opinions of Plaintiff's Treating Physicians**

Plaintiff's first challenge to the ALJ's decision is that he failed to follow the treating physician rule by ignoring the opinions of Plaintiff's treating orthopedic surgeon, Drs. Richard DiStefano and Hansen Yuan, that she cannot work and is totally disabled, and the opinion of Plaintiff's primary care physician, Dr. Patrick Carguello, that her pain is so pervasive and distracting that she is limited in her exertional capacity to less than the physical requirements of sedentary work. See Plaintiff's Brief, pp. 5-6, 8-9.  Plaintiff argues that the ALJ was selective in his examination of the record and relied only on the medical evidence provided by

non-treating sources to support his lay conclusion that Plaintiff is not disabled.
See Plaintiff's Brief, pp. 7-9.  The Commissioner argues that the ALJ did not
merely substitute his lay opinion for that of competent medical evidence, but
instead properly evaluated the medical opinions of all of Plaintiff's treating
physicians, explained why they were not entitled to controlling weight, and as the
trier of fact, weighed and resolved the conflicts in the evidence.   See
Defendant's Brief, pp. 20-23.

According to the "treating physician's rule,"[8] the ALJ must give controlling
weight to the treating physician's opinion when the opinion is well-supported by
medically acceptable clinical and laboratory diagnostic techniques and is not
inconsistent with the other substantial evidence in [the] record."  20 C.F.R. §
404.1527(d)(2); see also Green-Younger v. Barnhart, No. 02-6133, 2003 WL
21545097, at *6 (2d Cir. July 10, 2003); Shaw v. Chater, 221 F.3d 126, 134 (2d
Cir. 2000).

Even if a treating physician's opinion is deemed not to be deserving of
controlling weight, an ALJ may nonetheless give it "extra weight" under certain
circumstances.  Under  C.F.R. § 404.1527(d)(1)-(6), the ALJ should consider the
following factors when determining the proper weight to afford the treating
physician's opinion if it is not entitled to controlling weight: (1) length of the
treatment relationship and the frequency of examination, (2) nature and extent of
the treatment relationship, (3) supportability of opinion, (4) consistency, (5)

---

[8] "The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20
C.F.R. SS 404.1527 detailing the weight to be accorded a treating physician's opinion." de
Roman v. Barnhart, No.03-Civ.0075(RCC)(AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2,
2003).

specialization of the treating physician, and (6) other factors that are brought to the attention of the court.  See de Roman, 2003 WL 21511160, at *9 (citing C.F.R. § 404.1527(d)(2); see also Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998).

Having reviewed the evidence at issue, this Court detects no reversible error in the ALJ's treatment of the opinions of Plaintiff's treating physicians, Drs. DiStefano, Yuan and Carguello.  Rather, the ALJ's decision reflects his extensive evaluation of all the medical evidence in the record developed from the date of Plaintiff's alleged disability on July 9, 2003, through the date of the ALJ's decision on May 5, 2005 (R. at 16-22).  The medical evidence includes treatment notes, evaluations of Plaintiff's progress, and test results (R. at 119-316).  The opinions of Drs. DiStefano and Yuan that Plaintiff is "disabled" were unsupported by any functional limitations proffered by the physicians, and as a determination of disability is a matter reserved to the Commissioner, these opinions were not entitled to special significance.  See 20 C.F.R. § 404.1527(e); SSR 96-5p.  While the opinion of Dr. Carguello was accompanied by his assessment of Plaintiff's functional limitations, these limitations were unsupported by the doctor's notes and by Plaintiff's own reports of her physical capabilities and activities of daily living (R. at 53, 84-91, 239-242, 244-252, 332-335, 340-342).

Plaintiff's medical record documents that she suffered a back injury in January 1998 while performing her duties as a police officer for the City of Syracuse (R. at 188-193, 325).  She underwent a coccygectomy on October 4,

2001, and returned to work as a police officer assigned to light duty on March 1, 2002 (R. at 190, 325-327).

On July 9, 2003, Plaintiff was examined by her treating orthopedic specialist, Dr. DiStefano (R. at 163-165).  She told the doctor her back pain had worsened and that she could not work (R. at 163).  Upon examination, Dr. DiStefano observed that Plaintiff's gait and station were normal, she could walk on heels and toes without difficulty, straight-leg raising test[9] was negative bilaterally, and she had full strength in her lower extremities (R. at 164).  However, Plaintiff exhibited moderate tenderness to palpation and a moderately reduced range of motion in the lumbar spine area.  Id.  Dr. DiStefano diagnosed a strain or sprain to the ligaments or muscles in Plaintiff's lower back, prescribed Lortab, and stated Plaintiff was "temporarily totally disabled" (R. at 164-165).

Plaintiff complained to Dr. DiStefano of severe low back pain again on July 28, 2003, and on August 25, 2003 (R. at 294-295, 296-298).  While the doctor observed that Plaintiff had difficulty changing positions and appeared to be in pain, the results of her physical examinations on these days were fairly unremarkable and consistent with the examination on July 9, 2003 (R. at 163-164, 294, 297).

Plaintiff was examined by a pain management specialist, Dr. Martin Schaffer, on October 1, 2003 (R. at 221-222).  While Plaintiff claimed radiating lower back pain that worsened when she was on her feet or when she moved in

---

[9] The straight leg raise test ("SLR") is used to detect nerve root pressure, tension or irritation. A positive SLR requires the reproduction of pain at an elevation of less than 60 degrees. A positive SLR is said to be the most important indication of nerve root pressure. Andersson and McNeill, Lumbar Spine Syndromes, 78-79 (Springer-Verlag Wein, 1989).

certain directions, the examination revealed benign results (R. at 222).  In fact, the only physical manifestation of pain Dr. Schaffer was able to elicit from Plaintiff during the examination was "mild trigger points" in the bilateral lumbar paraspinal regions.  Id.  Electrodiagnostic tests performed at the time of the examination revealed normal results, with no evidence of peripheral nerve compression, polyneuropathy, or lumbosacral radiculopathy (R. at 223).

Plaintiff returned to Dr. DiStefano for re-examinations of her lower back on October 27, 2003, November 10, 2003, December 1, 2003, and February 4, 2004 (R. at 148, 153, 156, 289).  While she complained of worsening pain in her lower back, at each examination the doctor observed that she was in no acute distress, had a normal gait and stance, and ambulated well.  Id.  Physical examinations of Plaintiff's back and lower extremities were unremarkable, with Dr. DiStefano noting only that palpation of her lower back revealed mild paraspinal tenderness, and she had a moderately reduced range of motion in all directions.  Id.

On February 4, 2004, Plaintiff was examined by another pain management specialist, Dr. James Kowalczyk (R. at 212-214).  Dr. Kowalczyk noted that Plaintiff had been discharged by Dr. DiStefano, as Dr. DiStefano thought there was nothing further he could do surgically to improve Plaintiff's symptoms of pain (R. at 212).  Dr. Kowalczyk's observations mirrored those of Dr. Di Stefano (R. at 213).  He observed Plaintiff was well-developed and well-nourished, and in no acute distress.  Id.  Physical examination of Plaintiff's lumbar spine revealed it was well-aligned, with no significant loss of lordotic curve.  Id.  Dr. Kowalczyk noted evidence of bilateral paravertebral muscle

spasm, and Plaintiff complained of pain with forward flexion and extension, as well as lateral rotation.  Id.  However, examination of Plaintiff's lower extremities revealed normal results, with good muscle tone and bulk and no evidence of atrophy.  Id.  Further, sensory examination was normal.  Id.  Dr. Kowalczyk diagnosed discogenic pain syndrome and chronic low back pain, and recommended diagnostic provocative discography.  Id.

Plaintiff underwent the provocative discography procedure on March 26, 2004 (R. at 264-267).  The procedure reproduced pain at L3-4, L4-5, and L5/S1 (R. at 266).  Dr. Kowalczyk diagnosed disc degeneration with annular tear at L4-5.  Id.

At the request of the Commissioner, Plaintiff was examined by a State agency physician, Dr. Kalyani Ganesh, on April 6, 2004 (R. at 226-229).  Plaintiff told Dr. Ganesh she could not stand or sit for any length of time because of aching or sharp pain in her lower back, and thus she could not work (R. at 226).  Dr. Ganesh observed Plaintiff was in no acute distress, and had a normal gait and station (R. at 227).  She could walk on her heels and toes without difficulty, and rise from a chair without assistance.  Id.  She could squat fully with support.  Id.  Physical examination revealed normal results with the exception of the musculoskeletal examination of Plaintiff's lower back (R. at 228).  Lumbar flexion, extension, and rotation were limited by pain, as was Plaintiff's hip range of motion.  Id.   The straight leg raising test was positive bilaterally for lower back pain.  Id.  Dr. Ganesh opined Plaintiff had degenerative disc disease of the lumbosacral spine, and would have a moderate degree of limitation to sitting,

standing, walking, climbing, lifting, carrying, pushing, pulling and bending (R. at 228-229).  However, an x-ray of Plaintiff's lumbosacral spine taken the day of the examination by Dr. Ganesh revealed only mild L1-2 disc space narrowing (R. at 230).  No bony or disc space pathology was identified on the x-ray films.  Id.

Plaintiff returned to Dr. DiStefano for another examination on May 12, 2004 (R. at 280-281).  She reported a worsening of pain in her lower back (R. at 280).  Dr. DiStefano observed that Plaintiff appeared to be in no acute distress, had normal gait and station, and ambulated well (R. at 281).  While Plaintiff's lumbosacral range of motion was moderately reduced in all directions, her hip range of motion was full and painless bilaterally.  Id.  The straight leg raising test was negative bilaterally.  Id.  Palpation of Plaintiff's lower spine revealed only mild paraspinal tenderness.  Id.  Dr. DiStefano assessed Plaintiff as having degenerative disc disease without myelopathy, and opined she was not a surgical candidate.  Id.  He recommended she follow up with either Dr. Kowalczyk or her primary care provider for pain management.  Id.

On June 4, 2004, Plaintiff was examined by her primary care provider, Dr. Patrick Carguello (R. at 252).  He noted *that* the only abnormal finding in his examination was "some tenderness on palpation around L5 right side lumbar spine…"  Id.  Dr. Carguello recommended Plaintiff continue with her analgesic regimen.  Id.   Plaintiff followed up with Dr. Carguello on July 22, 2004, after a vacation trip to Florida (R. at 247).  He noted she had done very well in Florida and had used less medication "than she would use up north."  Id.  The results of Plaintiff's physical examination on that day were unremarkable.  Id.

13

Plaintiff was examined by Dr. Carguello again on August 26, 2004 (R. at 244).  He noted she had been going to physical therapy "and it is actually working well…The past few weeks she is noticing less need for any pain meds " Id.  The results of Plaintiff's physical examination were unchanged from her examination one month earlier.  Id.  In a disability dictation addendum to his examination report, Dr. Carguello stated his treatment of Plaintiff had been primarily adjusting her pain medications (R. at 245).  Dr. Carguello completed a Clinical Assessment of Pain wherein he opined Plaintiff's pain was so distracting that she could not adequately perform work-related duties, and that she was restricted from the workplace because she was unable to function at a productive level (R. at 237).  He also completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) wherein he assessed Plaintiff as able to lift and carry ten pounds occasionally, lift and carry less than ten pounds frequently, and stand and/or walk less than two hours in an eight hour workday (R. at 239-241).  He opined Plaintiff must sit and stand as needed to relieve pain, was limited in pushing and pulling with both her upper and lower extremities, could occasionally balance, but must never climb, kneel, crouch, crawl (R. at 240).  Dr. Carguello also assessed Plaintiff as able to reach only occasionally because reaching may cause back spasms (R. at 241).  However, the doctor did not explain what medical/clinical findings supported his conclusions.

On October 18, 2004, Plaintiff was examined by one of her treating physicians, an orthopedic surgeon, Dr. Hansen A. Yuan (R. at 260-263).  He noted she was taking "a whopping dose of medication" (R. at 260).  Dr. Yuan

observed Plaintiff rose from a chair cautiously (R. at 261).  However, physical examination revealed few medical findings.  Dr. Yuan noted Plaintiff was "totally intact" neurologically.  Id.  Straight leg raising test was negative bilaterally, knee and ankle reflexes were present and equal, and strength and sensation in Plaintiff's lower extremities were normal.  Id.  The most significant physical examination finding noted by Dr. Yuan was that Plaintiff "has tight hamstrings." Id.  He recorded that Plaintiff's most recent MRI showed no nerve root compression or herniation, but did reveal two "high intensity zones" at L4-5 and S-1.  Id.  Dr. Yuan observed that he could not "tell the degree of disc degeneration on the CT after the discogram."  Id.  He recommended Plaintiff taper off of her medications and undergo either a disc nucleus replacement, a procedure not approved by the FDA on the date of the examination, or a total disc replacement (R. at 262). He stated that she was totally disabled**.**

On December 28, 2004, Plaintiff called Dr. Carguello's office and said she had accidentally thrown away her prescription script for hydrocodone (R. at 312). However, the pharmacy reported the prescription had been filled on December 8, 2004.  Id.  Two days later, on December 30, 2004, Plaintiff called Dr. Carguello's office again and requested a note stating that a gym membership would take the place of physical therapy (R. at 313).  This is the last medical report in Plaintiff's record.

In this matter, the ALJ carefully evaluated the opinions of Plaintiff's treating physicians and discussed the weight he gave to each physician in his decision (R. at 20-22).  As an example, the ALJ discussed Dr. Carguello's

assessment of Plaintiff's vocational limitations (R. at 21).  However, the ALJ also noted that the limitations posed by Dr. Carguello were inconsistent with the doctor's fairly minimal findings based upon his physical examination of Plaintiff, as well as the minimal findings of Drs. Di Stefano and Kowalczyk (R. at 18, 21). The ALJ also considered the statements of Plaintiff's physicians, Drs. DiStefano and Yuan, that Plaintiff was "temporarily totally disabled," and "totally disabled at this time" in the 2004 time-frame (R. at 21).  Neither physician offered any functional limitations to support their opinions.  Further, the Court notes that the physical findings upon examination observed by these physicians were fairly benign.  As examples, during numerous examinations of Plaintiff, Dr. DiStefano observed that she was in no acute distress, had a normal stance and gait, and ambulated well (R. at 148, 153, 156, 158, 164, 167).  She exhibited a moderately reduced range of motion in her lower back, as well as mild paraspinal tenderness.  Id.  However, Plaintiff had full motor strength in her lower extremities, and her sensory examination was normal.  Id.  While Dr. Yuan observed Plaintiff arose cautiously from a chair, her physical examination was unremarkable (R. at 261).  He noted she was neurologically intact, and her straight leg raise test was benign.  Id.  Strength and sensation were normal.  Id.

The ALJ's decision that Plaintiff was not under a disability caused by limitations of her lumbar spine is further supported by a physical examination by State agency physician, Dr. Ganesh (R. at 226-229).  Dr. Ganesh observed that Plaintiff was in no acute distress, had a normal gait and station, could walk on her heels and toes without difficulty, and rose from a chair without assistance (R.

at 227). The most significant physical findings recorded by Dr. Ganesh were that Plaintiff had a moderately reduced range of motion in her lumbar spine, and a positive straight leg raising test bilaterally (R. at 228). The doctor also noted Plaintiff's hip range of motion was limited by pain. Id. However, Plaintiff was examined by Dr. DiStefano one month later and he found that while Plaintiff's range of motion in her lumbar spine was moderately limited, her straight leg raising test was negative (R. at 281). Further, Dr. DiStefano noted the range of motion in Plaintiff's hips was full and painless. Id.

It is clear from the record that the ALJ did not ignore, or disregard, the medical records and opinion of Plaintiff's treating physicians, Drs. DiStefano, Yuan, and Carguello, and substitute his lay opinion for that of competent medical evidence. Instead, the ALJ considered the opinion of Dr. Carguello, but found his highly restrictive assessment of Plaintiff's capabilities expressed in the Clinical Assessment of Pain report and the Medical Source Statement of Ability To Do Work-Related Activities (Physical) was unsupported by medically acceptable clinical and laboratory diagnostic techniques, and inconsistent with his own records as well as the records supplied by other treating and examining sources (R. at 18, 21). Further, the ALJ properly considered the opinions of Drs. DiStefano and Yuan that Plaintiff was disabled by her back impairment, but noted that these physicians did not describe any functional limitations caused by the impairment (R. at 21). In light of the limited medical evidence supporting Plaintiff's inability to work contained in the records of Drs. DiStefano, Yuan, and Carguello, the ALJ gave these opinions little weight. Id.

The ALJ also gave little weight to the assessment of a State agency analyst who, after reviewing the examination notes of Dr. Ganesh, stated that Plaintiff retained the residual functional capacity to perform a full range of sedentary work (R. at 21).  Instead, the ALJ's decision reveals he carefully considered the report of Dr. Ganesh's examination of Plaintiff, and found the doctor had suggested reasonable limitations on her ability to work (R. at 17, 22).  Thus, based on all of the medical evidence of record, the ALJ determined that Plaintiff could, at most, engage in a limited range of sedentary work (R. at 22-24).

It is well settled that an ALJ is entitled to rely upon the opinions of examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability.  See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), and 416.927(f)(2); see also Leach ex. Rel. Murray v. Barnhart, No. 02 Civ. 3561, 2004 WL 99935, at 9 (S.D.N.Y. Jan. 22, 2004) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims.  As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.")  Such reliance is particularly appropriate where, as here, the opinion of the State agency physician, Dr. Ganesh, is supported by the weight of the record evidence, including the medical findings of Plaintiff's treating physicians, including Drs. DiStefano, Yuan, and Carguello.  Further, it is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record.   See Richardson v. Perales, 402 U.S. 389, 399, 91 S. Ct. 1420, 1426, 28 L. Ed. 2d 842 (1971).  Thus, the Court finds that the ALJ carefully

reviewed and acknowledged the medical evidence and opinions contained in Plaintiff's record, including the Medical Source Statement of Ability to Do Work-Related Activities (Physical) prepared by Dr. Carguello, gave proper weight to the opinions of the treating and examining physicians, and based his finding about Plaintiff's residual functional capacity on the totality of evidence available to him on the date of his decision.

### b.     The ALJ Properly Analyzed Plaintiff's Credibility

Plaintiff's second challenge to the ALJ's decision is that he failed to properly analyze Plaintiff's credibility because i) he did not give specific and sufficient reasons for rejecting Plaintiff's credibility, and ii) he did not consider Plaintiff's record of seeking treatment for her pain.  See Plaintiff's Brief, pp. 9-12. Plaintiff argues that the ALJ failed to provide sufficiently specific reasons for rejecting her statements about her limitations such that she and subsequent reviewers could determine the weight the ALJ gave to her statements.  See Plaintiff's Brief, p. 10.  Further, Plaintiff claims the ALJ failed to consider that her persistent efforts to seek treatment for her pain enhances her credibility.  Id. Defendant argues that the ALJ properly exercised his authority to evaluate Plaintiff's credibility as required by 20 C.F.R. § 404.1529, and clarified by SSR 96-7p, and correctly found that Plaintiff's condition as described by her subjective complaints are not disabling to the extent alleged.  See Defendant's Brief, pp. 23-25.

An individual's statements about his or her condition, and the limitations caused by it, are not enough to establish disability.  See 20 C.F.R. § 404.1529.

The Commissioner's regulations require that an ALJ consider a claimant's observable signs and laboratory findings, as well as reported symptoms, when determining whether or not a disability exists within the meaning of the regulations.  Id.

When an ALJ determines a claimant has an underlying physical and/or mental impairment(s) that could reasonably be expected to produce the reported pain or other symptoms, the ALJ must then evaluate the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to do work-related activities.  See 20 C.F.R. § 404.1529(c); SSR 96-7p.

Plaintiff's medical evidence clearly establishes she has a severe back impairment (R. at 23, 119-315).   Without re-stating all of the medical evidence discussed in Section (a) above, it is apparent that Plaintiff suffers some functional limitations from her degenerative disc disease and the residual effects of her coccygectomy.

After considering the evidence of record, the ALJ found that Plaintiff's underlying medical impairments could reasonably be expected to produce some of the symptoms claimed, but that her statements concerning the intensity, persistence, and limiting effects of her reported symptoms are not entirely credible as her claims are not fully supported by objective medical evidence (R. at 20-22).

In her brief, as well as in her testimony before the ALJ, Plaintiff claims she suffers constant and disabling pain in her lower back (R. at 327-330, 332-340, 342).  See Plaintiff's Brief, pp. 4-6, 9-12.  However, her written testimony

contained in her Adult Function Report, as well as numerous answers to the

ALJ's questions, belie this claim (R. at 58-65, 252-294).  Plaintiff reported she

lives alone and is independent in her activities of daily living (84-87, 335-339).

She cooks regular meals, cleans her apartment without assistance, and walks

her dog (R. at 84-88, 337-339).  She walks daily for a distance of about one mile,

can sit for 30 to 60 minutes at a time, and can stand for up to 20 minutes (R. at

332-333).  She shops for food monthly and each shopping trip takes

approximately 30 minutes (R. at 88).  Id.  Plaintiff washes her own clothing and

carries her laundry to and from her father's house (R. at 341-342).  She

socializes with others one to two times per week (R. at 89).  She vacationed in

Florida in July 2004, and travelled the distance between New York and Florida by

car (R. at 342).  Plaintiff's wide and varied activities clearly suggest her pain is

not of disabling intensity.  See Rivera v. Harris, 623 F.2d 212, 216 (2d Cir. 1980).

("Her testimony showed that despite her pains and shortness of breath, she can

cook, sew, wash and shop, so long as she does these chores slowly and takes

an afternoon rest. Taken as a whole, appellant's testimony did not preclude the

possibility that she could perform gainful activity of a light, sedentary nature.").

See also Davis v. Callahan, 1997 WL 438772 (S.D.N.Y. August 4, 1997) (NO. 96

CIV. 9367 (SAS)).

      While Plaintiff complains that the ALJ did not give appropriate or adequate

reasons for discounting her credibility, the ALJ's decision clearly reveals he

assessed, and then discussed, his credibility findings according to the

requirements of 20 C.F.R. § 404.1529 and SSR 96-7p.  The ALJ found that

Plaintiff's underlying back impairment could reasonably be expected to produce some degree of pain and discomfort; however, he also found that the evidence failed to establish that Plaintiff's pain and discomfort was of such disabling intensity that it would preclude all substantial gainful activity (R. at 20).  As an example, the ALJ noted the records of all of Plaintiff's treating sources revealed no more than moderate physical findings upon examination.  Id.  Although Plaintiff claimed she had to lay flat on her back on a heating pad for much of the day, her physicians most often found her in no acute distress.  Id.  Plaintiff exhibited normal gait and station, full motor strength in her lower extremities, and only moderately reduced range of motion in her lumbar spine.  Id.  She is independent in her activities of daily living and recently joined a gym so she could exercise on a treadmill.  Id.  While Plaintiff claimed her medications impaired her ability to concentrate, the medical records failed to document serious and/or continuing complaints about side effects from medications.  Id.

Despite Plaintiff's assertion that the ALJ did not correctly evaluate the medical evidence in her record when assessing the credibility of her statements regarding pain and limitations from her back impairment, it is clear to the Court from the ALJ's decision that he carefully examined and considered Plaintiff's claims in light of all of the evidence of record.  As noted above, the ALJ did not doubt Plaintiff experienced some pain and discomfort (R. at 20).  However, disability requires more than the ability to work without pain.  See Dumas v. Schweiker, 712 F. 2d 1545, 1552 (2d Cir. 1983).  Pain, either by itself or in combination with a claimant's documented impairments, must be of such

intensity that it would preclude any substantial gainful activity.  Id.  The ALJ

acknowledged that Plaintiff could not return to her past relevant employment as a

police officer, and indeed was limited by her back impairment to work that is less

than the full range of sedentary work (R. at 22-23).  However, with the assistance

of a vocational expert, the ALJ identified work that exists in significant numbers in

the national and local economies that Plaintiff retained could reasonably be

expected to perform.  Id.

Plaintiff further complains that the ALJ did not consider her persistent

efforts to obtain pain relief in his credibility assessment.  See Plaintiff's Brief, p.

10.  While it is true that the ALJ did not explicitly give credit to Plaintiff for her

efforts over time to relieve her discomfort, it is clear to the Court from the ALJ's

decision that he thoroughly considered the medical and other evidence, including

Plaintiff's numerous doctors' appointments and medications taken to relieve pain.

As noted above, repeated physical examinations of Plaintiff's lumbar spine and

lower extremities revealed mostly mild to moderate findings (R. at 148, 153, 156,

163-165, 212-214, 222, 223, 226-229, 230, 244, 247, 252, 260-263, 280-281,

289, 294, 297, 312, 313).  Further, Plaintiff's heavy use of prescription

medication raised alarm in at least one of her physicians, who commented that

he was disappointed that Plaintiff had been "put on such a high dose of

medication," and that she should be "weaned" from her "whopping dose of

medication (R. at 260-261).

Thus, the Court finds the ALJ properly considered Plaintiff's symptoms,

complaints of pain, and reported limitations, along with the medical and other

evidence in the record, and further finds the totality of evidence does not substantiate Plaintiff's claims that her pain and other symptoms are disabling within the meaning of the Act.  Accordingly, the ALJ exercised his discretion to evaluate the credibility of Plaintiff's testimony, presented a summary of his evaluation, and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence (R. at 15-16).  See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir. 1984).  Although the ALJ found Plaintiff's claims of pain and limitations from her severe impairments to be not entirely credible, he nevertheless determined Plaintiff could not return to her past relevant work as a police officer, but could engage in a significant range of sedentary work (R. at 21-24).

### c.   The ALJ Properly Found Plaintiff Retained the Residual Functional Capacity to Engage in a Significant Range of Sedentary Work on a Sustained Basis

Plaintiff's third claim is that the ALJ erred by finding Plaintiff retained the residual functional capacity to engage in a significant range of sedentary work on a sustained basis.  See Plaintiff's Brief, pp. 11-12.  Plaintiff argues that because she must lay down three to four times per day for approximately 60 to 90 minutes each time, she is incapable of performing any work on a regular and sustained basis.  Id.  Defendant responds that because Plaintiff failed to show that her impairment has caused functional limitations that would preclude her from engaging in substantial gainful activity, it was reasonable for the ALJ to find her subjective complaints not incapacitating to the extent alleged.  See Defendant's

Brief, p. 23.  Further, while the ALJ determined Plaintiff could not return to her past relevant work as a police office, he properly found her capable of engaging in a significant range of sedentary work on a sustained basis.  Id.

 "Disability" is defined as the inability to engage in *any* substantial gainful employment by reason of any medically determinable impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C.A. § 423(d)(1)(A). However, the mere presence of a severe impairment or multiple impairments is insufficient to establish disability; the claimant must present evidence that he or she has functional limitations resulting from the impairment that would preclude participation in any substantial gainful activity.  See Coleman v. Shalala, 805 F. Supp. 50, 53 (S.D.N.Y. 1995); Rivera v. Harris, 623 F.2d 212, 215-216 (2d Cir. 1980).

After considering all of the evidence of record pertaining to a claimant's impairments, the ALJ is responsible for determining the claimant's residual functional capacity.  See 20 C.F.R. § 404.1546.  If a claimant is unable to perform his or her past relevant work, the burden shifts to the Commissioner at step five of the sequential evaluation to show that there is work the claimant can do despite his or her limitations that exists in significant numbers in the national and local economies.  See 20 C.F.R. § 404.1560.

In this matter, the ALJ found Plaintiff has severe impairments of the lower back (R. at 18, 23).  He further found that Plaintiff's impairments have caused functional limitations that would preclude her from returning to her medium

exertional level[10] past relevant work as a police officer (R. at 21-24).  Additionally, the ALJ determined that Plaintiff has non-exertional limitations that would preclude her from participating in even the full range of sedentary work (R. at 21-24).  However, as discussed in sections (a) and (b) above, Plaintiff's medical and other evidence fails to establish functional limitations of such magnitude that she would be precluded from participation in any work activity at all.  Thus, the ALJ engaged the services of a vocational expert to identify sedentary jobs in the national and local economies that would be available to Plaintiff.

The Court finds that the ALJ did not err when, based on Plaintiff's medical and other evidence, including the vocational expert testimony, he reasonably concluded that she retained the residual functional capacity to engage in a significant range of sedentary work.

## Conclusion

After carefully examining the administrative record, the Court finds substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and supported medical opinions.  It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating physicians and the State agency medical consultants, and afforded Plaintiff's subjective claims of pain and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled.  The Court finds no reversible error, and further finding that substantial

---

[10] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work.  See 20 C.F.R. § 404.1567(c).

evidence supports the ALJ's decision, the Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking the same.

IT IS HEREBY ORDERED, that Defendant's Motion for Judgment on the Pleadings is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings is DENIED.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

_____

Victor E. Bianchini
United States Magistrate Judge

Dated:    March 23, 2010
          Syracuse, New York